**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CANADA GOOSE INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-11075 |
| | ) | |
| | ) | **Judge Amy J. St. Eve** |
| v. | ) | |
| | ) | **Magistrate Judge Jeffrey Cole** |
| KOBE SONG, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY
OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY TRANSFER OF THE DEFENDANT DOMAIN
NAMES, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND
<u>SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION</u>**

Plaintiff Canada Goose Inc. ("Plaintiff" or "Canada Goose") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, a temporary transfer of the Defendant Domain Names, a temporary asset restraint, expedited discovery, and service of process by e-mail and/or electronic publication (the "*Ex Parte* Motion").

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    STATEMENT OF FACTS ........................................................................... 5

    A.    Canada Goose's Trademarks and Products ............................................. 5

    B.    Defendants' Unlawful Activities .......................................................... 8

        i.    Defendants Operate Legitimate-Looking Internet Stores ........................... 9

        ii.    Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines ............................................................................. 9

        iii.    Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down ........................................................................................ 10

III.    ARGUMENT ....................................................................................... 13

    A.    This Court May Exercise Personal Jurisdiction Over Defendants ....................... 14

    B.    Standard for Temporary Restraining Order and Preliminary Injunction .............. 17

    C.    Canada Goose Will Likely Succeed on the Merits ................................... 18

        i.    Canada Goose Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim. ..................................................................... 18

        ii.    Canada Goose Is Likely to Succeed on Its False Designation of Origin Claim ......................................................................................... 22

        iii.    Canada Goose Is Likely to Succeed on Its Cybersquatting Claim ........... 23

            1.    The CANADA GOOSE Trademarks Are Distinctive and Famous ................................................................................... 23

            2.    Defendants Have Bad Faith Intent to Profit from the CANADA GOOSE Trademarks .............................................................. 24

            3.    The Domain Names Are Identical or Confusingly Similar to or Dilutive of the CANADA GOOSE Trademarks ........................... 26

        iv.    Canada Goose Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim ............................................................. 26

    D.    There Is No Adequate Remedy at Law and Canada Goose Will Suffer Irreparable Harm in the Absence of Preliminary Relief ............................................. 27

    E.    The Balancing of Harms Tips in Canada Goose's Favor ................................... 28

    F.    Issuance of the Injunction Is in the Public Interest ................................... 29

IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ..................................... 30

A.     A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Canada Goose's Marks Is Appropriate ........ 31

B.     Transferring the Defendant Domain Names to Canada Goose's Control Is Appropriate ........................................................................................................ 32

C.     Preventing the Fraudulent Transfer of Assets Is Appropriate ............................. 33

D.     Canada Goose Is Entitled to Expedited Discovery ................................................ 35

E.     Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case ...................................................................................................................... 36

V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................................... 41

VI.    CONCLUSION ................................................................................................................... 42

## **TABLE OF AUTHORITIES**

### Federal Cases

*Abbott Labs. v. Mead Johnson & Co.,*
 971 F.2d 6 (7th Cir. 1992) ................................................................. 17

*Abercrombie & Fitch Trading Co. v. 4cheapbags.com,*
 No. 1:12-cv-21088 (S. D. Fla. June 6, 2012) (unpublished)................................. 3, 32, 42

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,*
 2013 WL 1701871 (C.D. Ill. Apr. 18, 2013) .................................................. 22

*Am. Broad. Co. v. Maljack Prods., Inc.,*
 34 F. Supp. 2d 665 (N.D. Ill. 1998) ........................................................ 27

*Animale Grp. Inc. v. Sunny's Perfume Inc.,*
 256 F. App'x 707 (5th Cir. 2007) ....................................................... 34, 35

*Bd. of Dirs. of Sapphire Bay Condos. W. v. Simpson,*
 129 F. App'x 711 (3d Cir. 2005) ............................................................ 33

*Beats Electronics, LLC v. The Partnerships, et al.,*
 No. 13-cv-6724 (N.D. Ill. Sept. 25, 2014) (unpublished)................................... 3, 31

*Burberry Limited, et al. v. Weng Junpeng, et al.,*
 No. 15-cv-7994 (N.D. Ill. Oct. 2, 2015) .................................................... 15

*Burger King Corp. v. Majeed,*
 805 F. Supp. 994 (S.D. Fla. 1992) .......................................................... 29

*CAE, Inc. v. Clean Air Eng'g Inc.,*
 267 F.3d 660 (7th Cir. 2001) ........................................................... 20, 22

*Calvin Klein Trademark Trust, et al. v. The Partnerships, et al.,*
 No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) (unpublished)................................... 3, 31

*Chanel, Inc. v. Paley,*
 No. 3:09-cv-04979-MHP (N.D. Cal. Nov. 13, 2009) (unpublished).............................. 33

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.,*
 No. 1:01-cv-00905, 2001 WL 527404 (N.D. Ill. May 15, 2001)................................. 17

*Christian Dior Couture, S.A. v. Lei Liu et al.,*
 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015).................................... 15

*Chrome Hearts LLC v. The Partnerships, et al.*,
   No. 13-cv-4787 (N.D. Ill. July 10, 2013) (unpublished) ................................................. 3, 31

*Coach, Inc., et al. v. Does 1-100*,
   No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) .................................... 3, 32, 42

*Columbia Pictures Indus., Inc. v. Jasso*,
   27 F. Supp. 1075 (N.D. Ill. 1996) ................................................................................. 14

*CSC Holdings, Inc. v. Redisi*,
   309 F.3d 988 (7th Cir. 2002) ........................................................................................ 35

*Deckers Outdoor Corp. v. Does 1-1,281*,
   No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) ............................. 3, 16, 32, 42

*Deckert v. Independence Shares Corp.*,
   311 U.S. 282 (1940) ...................................................................................................... 34

*Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*,
   2010 WL 4877708 (N.D. Ill. 2010) ............................................................................... 16

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*,
   94 F.3d 376 (7th Cir. 1996) .......................................................................................... 19

*Eli Lilly & Co. v. Natural Answers, Inc.*,
   233 F.3d 456 (7th Cir. 2000) ........................................................................ 17, 19, 27, 29

*Euromarket Designs, Inc. v. Crate & Barrel Ltd.*,
   96 F. Supp. 2d 824 (N.D. Ill. 2000) .............................................................................. 16

*Ford Motor Co. v. Lapertosa*,
   126 F. Supp. 2d 463 (E.D. Mich. 2000) .................................................................. 32, 33

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*,
   873 F.2d 985 (7th Cir. 1989) ........................................................................................ 20

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*,
   35 F.3d 1134 (7th Cir. 1994) ........................................................................................ 28

*Gillespie v. Civiletti*,
   629 F.2d 637 (9th Cir. 1980) ........................................................................................ 35

*Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*,
   527 U.S. 308 (1999) ...................................................................................................... 34

*Harrods Ltd. v. Sixty Internet Domain Names*,
   302 F.3d 214 (4th Cir. 2002) .................................................................................. 25, 26

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.,*
    560 F.2d 1325 (7th Cir. 1977) ........................................ 27

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,*
    174 F.3d 411 (4th Cir. 1999) ........................................ 41

*Ideal Indus., Inc. v. Gardner Bender, Inc.,*
    612 F.2d 1018 (7th Cir. 1979) ........................................ 27

*Illinois v. Hemi Group LLC,*
    622 F.3d 754 (7th Cir. 2010) ........................................ 16

*In re LDK Solar Secs. Litig.,*
    2008 WL 2415186 (N.D. Cal. Jun. 12, 2008) ........................................ 40

*In re Potash Antitrust Litig.,*
    667 F. Supp. 2d 907 (N.D. Ill. 2009) ........................................ 40

*In re Vuitton et Fils, S.A.,*
    606 F.2d 1 (2d Cir. 1979) ........................................ 4

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,*
    846 F.2d 1079 (7th Cir. 1988) ........................................ 27

*James Burrough Ltd. v. Sign of the Beefeater, Inc.,*
    540 F.2d 266 (7th Cir. 1976) ........................................ 29

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,*
    188 F. 3d 427 (7th Cir. 1999) ........................................ 23

*Juniper Networks, Inc. v. Bahattab,*
    No. 1:07-cv-01771-PLF-AK, 2008 WL 250584 (D.D.C. Jan. 30, 2008) ........................................ 39

*Kraft Food Holdings, Inc. v. Helm,*
    205 F. Supp. 2d 942 (N.D. Ill. 2002) ........................................ 32

*Krause Int'l Inc. v. Reed Elsevier, Inc.,*
    866 F. Supp. 585 (D.D.C. 1994) ........................................ 28

*Lamparello v. Falwell,*
    420 F.3d 309 (4th Cir. 2005) ........................................ 26

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,*
    51 F.3d 982 (11th Cir. 1995) ........................................ 34, 35

*Levi Strauss v. Shilon,*
    121 F.3d 1309 (9th Cir. 1997) ........................................ 16

*Libman Co. v. Vining Indus., Inc.*,
    69 F.3d 1360 (7th Cir.1995) ................................................................. 21

*Lorillard Tobacco Co. v. Montrose Wholesale Candies*,
    2005 WL 3115892 (N.D.Ill. Nov. 8, 2005) ......................................... 34

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
    211 F. Supp. 2d 567 (E.D. Pa. 2002) ................................................... 25

*Lucas Nursery & Landscaping, Inc. v. Grosse*,
    359 F.3d 806 (6th Cir. 2004) ............................................................... 23

*Lululemon Athletica Canada Inc. v. The Partnerships, et al.*,
    No. 13-cv-6297 (N.D. Ill. Sept. 10, 2013) (unpublished) ............... 3, 31

*Luxottica USA LLC v. The Partnerships, et al.*,
    No. 13-cv-4429 (N.D. Ill. June 20, 2013) (unpublished) ................ 3, 32

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*,
    No. 1:08-cv-02593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) ......... 39

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*,
    929 F. Supp. 473 (D.D.C. 1996) .......................................................... 29

*Manolo Blahnik International Limited v. The Partnerships, et al.*,
    No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013) (unpublished) ............... 3, 31

*Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*,
    128 F.3d 1111 (7th Cir. 1997) ............................................................. 27

*Michael Kors, L.L.C. v. The Partnerships, et al.*,
    No. 13-cv-8612 (N.D. Ill. Dec. 5, 2013) (unpublished) .................. 3, 31

*Microsoft Corp. v. Rechanik*,
    249 F. App'x 476 (7th Cir. 2007) ........................................................ 19

*Monster Energy Company v. Chen Wensheng, et al.*,
    2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015) ................ 15

*Nanya Tech. Corp. v. Fujitsu Ltd.*,
    No. 1:06-cv-00025, 2007 WL 269087 (D. Guam Jan. 26, 2007) ......... 40

*NBA Properties, Inc., et al. v. The Partnerships, et al.*,
    No. 13-cv-7181 (N.D. Ill. Oct. 9, 2013) (unpublished) ................... 3, 31

*Neopost Industrie B.V. v. PFE Int'l Inc.*,
    403 F. Supp. 2d 669 (N.D. Ill. 2005) ............................................. 18, 23

*Oakley, Inc. v. Does 1-100*,
   No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished)........................................ 3, 32, 41

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340, 351, 98 S.Ct. 2380 (1978) ........................................................................ 35

*Philip Morris U.S.A., Inc. v. Otamedia Ltd.*,
   331 F. Supp. 2d 228 (S.D.N.Y. 2004)............................................................................... 33

*Polo Fashions, Inc. v. Craftex, Inc.*,
   816 F.2d 145 (4th Cir. 1987) ........................................................................................... 19

*Popular Enters., LLC v. Webcom Media Group, Inc.*,
   225 F.R.D. 560 (E.D. Tenn. 2004)............................................................................... 39, 41

*Promatek Industries, Ltd. v. Equitrac Corp.*,
   300 F.3d 808 (7th Cir. 2002) ........................................................................................... 28

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) ........................................................................................... 15

*Rathmann Grp. v. Tanenbaum*,
   889 F.2d 787 (8th Cir. 1989) ........................................................................................... 41

*Re/Max N. Cent., Inc. v. Cook*,
   272 F.3d 424 (7th Cir. 2001) ........................................................................................... 27

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
   970 F.2d 552 (9th Cir. 1992) ....................................................................................... 34, 35

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ............................................................................... 38, 39, 40

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
   978 F.2d 947 (7th Cir. 1992) ........................................................................................... 21

*Shashi, Inc. v. Ramada Worldwide, Inc.*,
   No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593 (W.D. Va. Mar. 1, 2005).................... 29

*Spex, Inc. v. Joy of Spex, Inc.*,
   847 F. Supp. 567 (N.D. Ill. 1994) .................................................................................... 26

*Stahly, Inc. v. M.H. Jacobs Co.*,
   183 F.2d 914 (7th Cir. 1950) ........................................................................................... 29

*Topps Co., Inc. v. Gerrit J. Verburg Co.*,
   41 U.S.P.Q. 2d 1412 (S.D.N.Y. 1996).............................................................................. 19

*Tory Burch LLC v. Zhong Feng, et al.*,
    No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) .................................. 3, 32, 42

*Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.*,
    No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) ................................ 4, 32

*Trans Union LLC v. Credit Research, Inc.*,
    142 F. Supp. 2d 1029 (N.D. Ill. 2001) ............................................................................ 21

*True Religion Apparel, Inc. v. Does 1-100*,
    No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished)........................................ 3, 32, 41

*Ty, Inc. v. Baby Me, Inc.*,
    2001 LEXIS 5761 (N.D. Ill. 2001) ................................................................................. 16

*TY, Inc. v. The Jones Group, Inc.*,
    237 F.3d 891 (7th Cir. 2001) ...................................................................................... 17, 28

*uBID, Inc. v. GoDaddy Group, Inc.*,
    623 F.3d 421 (7th Cir. 2010) ........................................................................................... 15

*Vance v. Rumsfeld*,
    No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007) ................................... 35

*Virtual Works, Inc. v. Volkswagen of Am., Inc.*,
    238 F.3d 264 (4th Cir. 2001) ........................................................................................... 25

*Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*,
    698 F.2d 862 (7th Cir. 1983) ........................................................................................... 27

## Statutes

15 U.S.C. § 1051 ..................................................................................................................... 14

15 U.S.C. § 1057(b) ................................................................................................................ 18

15 U.S.C. § 1114(1) ................................................................................................................ 18

15 U.S.C. § 1116(a) ............................................................................................................. 4, 30

15 U.S.C. § 1117(a) ................................................................................................................... 5

15 U.S.C. § 1117(a)(1) ............................................................................................................ 34

15 U.S.C. § 1125 ..................................................................................................................... 25

15 U.S.C. § 1125(a) ................................................................................................................ 22

15 U.S.C. § 1125(d)(1)(A) ............................................................................... 23

15 U.S.C. § 1125(d)(1)(B)(i) ........................................................................... 25

15 U.S.C. § 1125(d)(1)(C) ............................................................................... 23

17 U.S.C. § 501 ................................................................................................ 25

28 U.S.C. § 1331 .............................................................................................. 14

28 U.S.C. § 1367(a) .......................................................................................... 14

28 U.S.C. § 1391 .............................................................................................. 14

28 U.S.C. §§ 1338(a)-(b) ................................................................................. 14

Fed. R. Civ. P. 26(b)(2) .................................................................................... 35

Fed. R. Civ. P. 4(b) .......................................................................................... 41

Fed. R. Civ. P. 4(f)(3) ..................................................................... 36, 38, 39, 40

Fed. R. Civ. P. 65 ....................................................................................... 30, 36

Fed. R. Civ. P. 65(b) ................................................................................... 13, 30

Fed. R. Civ. P. 65(b)(1) .................................................................................... 28

Fed. R. Civ. P. 65(c) ......................................................................................... 41

Fed. R. Civ. P. 65(d)(2)(C) ..................................................................... 4, 30, 36

## Other Authorities

*4 Callmann on Unfair Competition, Trademarks and Monopolies*
    § 88.3(b) (3d ed. 1970) ............................................................. 27

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
    § 30:40 (4th ed. 2013) ............................................................... 35

## MEMORANDUM OF LAW

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Canada Goose Inc. ("Plaintiff" or "Canada Goose") brings this action against the defendants identified on Schedule "A" to the Amended Complaint (collectively, the "Defendants") for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), cybersquatting (Count III), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV).  As alleged in Canada Goose's Amended Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit products, including outerwear bearing counterfeit versions of Canada Goose's federally registered Canada Goose trademarks (collectively, the "Counterfeit Canada Goose Products"), through various fully interactive, commercial Internet websites operating under at least the Defendant Domain Names and Online Marketplace Accounts listed in Schedule A to the Amended Complaint (collectively, the "Defendant Internet Stores").  In short, Defendants run a sophisticated counterfeiting operation with reckless disregard for anything except generating profits.

The Defendants create the Defendant Internet Stores by the hundreds or even thousands and design them to appear to be selling genuine Canada Goose products, while actually selling unauthorized and unlicensed Counterfeit Canada Goose Products to unknowing consumers.  The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.  Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation.  Canada Goose is forced to file these actions to combat Defendants'

counterfeiting of the registered Canada Goose trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Canada Goose Products over the Internet.

This Court has personal jurisdiction over Defendants because each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Canada Goose Products to consumers within the United States, including the State of Illinois. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Canada Goose's CANADA GOOSE trademarks. Defendants directly target unlawful business activities toward consumers in Illinois, cause harm to Canada Goose's business within this Judicial District, and have caused and will continue to cause irreparable injury to Canada Goose. Defendants deceive the public by trading upon Canada Goose's reputation and goodwill by using their commercial, interactive Internet Stores to sell and/or offer for sale unlicensed Counterfeit Canada Goose Products featuring Canada Goose's trademarks.

Defendants' ongoing unlawful activities should be restrained, and Canada Goose respectfully requests that this Court issue *ex parte* a Temporary Restraining Order. Specifically, Plaintiff seeks an order: (1) temporarily restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of Counterfeit Canada Goose Products; (2) temporarily transferring the Defendant Domain Names to Canada Goose so that the continued use of the domains in carrying out acts of infringement can be temporarily disabled; and (3) temporarily restraining Defendants' assets to preserve Canada Goose's right to an equitable accounting. Ancillary to and as part of the TRO, Canada Goose respectfully requests that this Court (4) authorize expedited discovery allowing Canada Goose to inspect and copy Defendants'

records relating to the manufacture, distribution, offering for sale, and sale of Counterfeit Canada Goose Products and Defendants' financial accounts; and (5) authorize service by electronic mail and/or electronic publication at the Defendant Domain Names.

In light of the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for trademark counterfeiting, courts regularly issue such orders. *See, e.g., Michael Kors, L.L.C. v. The Partnerships, et al.*, No. 13-cv-8612 (N.D. Ill. Dec. 5, 2013) (unpublished) (Granting *ex parte* Temporary Restraining Order); *Calvin Klein Trademark Trust, et al. v. The Partnerships, et al.*, No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) (unpublished) (same); *Manolo Blahnik International Limited v. The Partnerships, et al.*, No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013) (unpublished) (same); *NBA Properties, Inc., et al. v. The Partnerships, et al.*, No. 13-cv-7181 (N.D. Ill. Oct. 9, 2013) (unpublished) (same); *Beats Electronics, LLC v. The Partnerships, et al.,* No. 13-cv-6724 (N.D. Ill. Sept. 25, 2014) (unpublished) (same); *Lululemon Athletica Canada Inc. v. The Partnerships, et al.*, No. 13-cv-6297 (N.D. Ill. Sept. 10, 2013) (unpublished) (same); *Chrome Hearts LLC v. The Partnerships, et al.*, No. 13-cv-4784 (N.D. Ill. July 10, 2013) (unpublished) (same); *Luxottica USA LLC v. The Partnerships, et al.*, No. 13-cv-4429 (N.D. Ill. June 20, 2013) (unpublished) (same); *Oakley, Inc. v. Does 1-100,* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (same); *True Religion Apparel, Inc. v. Does 1-100,* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Tory Burch LLC v. Zhong Feng, et al.,* No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Coach, Inc., et al. v. Does 1-100,* No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) (same); *Abercrombie & Fitch Trading Co. v. 4cheapbags.com,* No. 1:12-cv-21088 (S. D. Fla. June 6, 2012) (unpublished) (same); *Tory Burch, LLC v. Yong*

*Sheng Int'l Trade Co., Ltd.,* No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) (same)*; see also, In re Vuitton et Fils*, *S.A.,* 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Canada Goose's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations establishes that issuing a temporary restraining order against Defendants is necessary and proper. More specifically, Canada Goose can demonstrate a strong likelihood of success on the merits, as further explained herein. Canada Goose is the owner of numerous trademark registrations for its Canada Goose trademarks, and Defendants' use of Canada Goose's trademarks to sell Counterfeit Canada Goose Products is causing both point-of-sale and post-sale consumer confusion. In addition, Defendants have and continue to irreparably harm Canada Goose through diminished goodwill and damage to Canada Goose's reputation, and there is no amount of money that can compensate Canada Goose for these damages. Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Counterfeit Canada Goose Products.

In addition, an order authorizing the transfer of the Defendant Domain Names to Canada Goose's control so that the continued use of the domains in carrying out acts of infringement can be temporarily disabled is warranted pursuant to 15 U.S.C. § 1116(a) which authorizes this Court "to grant injunctions … to prevent the violation of any right of the registrant of a mark…." Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active

concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Canada Goose seeks an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a). Finally, an order authorizing service of process by e-mail and/or electronic publication is proper since Defendants go to great lengths to conceal their identities and operate their business online. In fact, serving Defendants electronically is the best method for notifying them of this action and providing them the opportunity to defend and present their objections.

## II.    STATEMENT OF FACTS

### A.    Canada Goose's Trademarks and Products

Founded in a small warehouse in Toronto, Canada, Canada Goose has grown to be an internationally recognized manufacturer, distributor and retailer of high quality, functional, down-filled outerwear, including parkas, jackets, and coats and associated accessories for men, women and children, all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including CANADA GOOSE (collectively, the "Canada Goose Products"). Declaration of David Forrest, the "Forrest Declaration," at ¶ 3. Canada Goose Products have become enormously popular and even iconic, driven by Canada Goose's arduous quality standards and innovative design. *Id.* Among the purchasing public, genuine Canada Goose Products are instantly recognizable as such. *Id.* In the United States and around the world, the Canada Goose brand has come to symbolize high quality, and Canada Goose Products are among the most recognizable outerwear in the world. *Id.*

Canada Goose Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Barneys, Bloomingdales, Nordstrom, Neiman Marcus, Paragon Sports, and Saks Fifth Avenue, and also

through authorized online retailers in the United States including, but not limited to, Bergdorf Goodman, Moosejaw and Uncle Dan's. *Id.* at ¶ 4.

Canada Goose incorporates a variety of distinctive marks in the design of its various Canada Goose Products. *Id.* at ¶ 5. As a result of its long-standing use, Canada Goose owns common law trademark rights in its CANADA GOOSE Trademarks. *Id.* Canada Goose has also registered its trademarks with the United States Patent and Trademark Office. *Id.* Canada Goose Products typically include at least one of Canada Goose's registered trademarks. *Id.* Often several Canada Goose marks are displayed on a single product. *Id.* Canada Goose uses its trademarks in connection with the marketing of its Canada Goose Products, including the following marks which are collectively referred to as the "CANADA GOOSE Trademarks." *Id.* True and correct copies of Canada Goose's United States trademark registrations are attached to the Forrest Declaration as Exhibit 1.

The CANADA GOOSE Trademarks have been used exclusively and continuously in the U.S. by Canada Goose, some since at least as early as 1994, and have never been abandoned. *Id.* at ¶ 6. The above registrations for the CANADA GOOSE Trademarks are valid, subsisting, in full force and effect, and Registration No. 3,254,771 is incontestable pursuant to 15 U.S.C. § 1065. *Id.* The registrations for the CANADA GOOSE Trademarks constitute prima facie evidence of their validity and of Canada Goose's exclusive right to use the CANADA GOOSE Trademarks pursuant to 15 U.S.C. § 1057(b).

The CANADA GOOSE Trademarks are exclusive to Canada Goose, and are displayed extensively on Canada Goose Products and in Canada Goose's marketing and promotional materials. *Id.* at ¶ 7. Canada Goose Products have long been among the most popular outerwear in the world and have been extensively promoted and advertised at great expense. *Id.* In fact,

Canada Goose has expended millions of dollars annually in advertising, promoting and marketing featuring the CANADA GOOSE Trademarks. *Id.*

Canada Goose Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, functional use in extreme weather, and have been featured in luxury upscale magazines such as Travel and Leisure, Town & Country, Vogue, GQ, Esquire and Elle. *Id.* at ¶ 8. In fact, Canada Goose is the preferred outerwear of film crews, particularly those filming in extreme conditions, such as the crew that filmed the documentary capturing the journey of a champion musher along the 2013 Iditarod trail. *Id.* Canada Goose Products have also been featured prominently on screen, including in the 2004 blockbuster "The Day After Tomorrow," "Mr. Popper's Penguins" in 2011, and "Man of Steel" in 2013, which has bolstered Canada Goose's popularity and relationship with the film industry. *Id.* Because of these and other factors, the Canada Goose name and the CANADA GOOSE Trademarks have become famous throughout the United States. *Id.*

The CANADA GOOSE Trademarks are distinctive when applied to the Canada Goose Products, signifying to the purchaser that the products come from Canada Goose and are manufactured to Canada Goose's quality standards. *Id.* at ¶ 9. Whether Canada Goose manufactures the products itself or licenses others to do so, Canada Goose has ensured that products bearing its trademarks are manufactured to the highest quality standards. *Id.* The CANADA GOOSE Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. *Id.* As such, the goodwill associated with the CANADA GOOSE Trademarks is of incalculable and inestimable value to Canada Goose. *Id.*

Since at least as early as 1999, Canada Goose has operated a website where it promotes Canada Goose Products at canada-goose.com. *Id.* at ¶ 10. Canada Goose Products are available

7

for online purchase through the canada-goose.com website only in Canada, but the website lists authorized U.S. retailers of Canada Goose Products. *Id.* Online sales of Canada Goose Products represent a significant portion of Canada Goose's business. *Id.* The canada-goose.com website features proprietary content, images and designs exclusive to Canada Goose. *Id.*

Canada Goose has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the CANADA GOOSE Trademarks. *Id.* at ¶ 11. As a result, products bearing the CANADA GOOSE Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products from Canada Goose. *Id.* Canada Goose is a multi-million dollar operation, and Canada Goose Products have become among the most popular of their kind in the world. *Id.*

### B. Defendants' Unlawful Activities

The success of the Canada Goose brand has resulted in its significant counterfeiting. *Id.* at ¶ 12. Consequently, Canada Goose has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. *Id.* In recent years, Canada Goose has identified thousands of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit Canada Goose Products to consumers in this Judicial District and throughout the United States. *Id.* Despite Canada Goose's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores, which generate massive profits selling Counterfeit Canada Goose Products. *Id.* Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. Declaration of Justin Gaudio, the "Gaudio Declaration," at ¶ 2. According to an intellectual property rights seizures statistics report issued

8

by Homeland Security, the manufacturer's contribute to tens of suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. *Id.* at ¶ 3. Internet websites like the Defendant Internet Stores are also estimated to thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.* at ¶ 4.

i.    Defendants Operate Legitimate-Looking Internet Stores

Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Canada Goose Products. Forrest Declaration at ¶ 14. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. *Id.* Numerous Defendant Domain Names also incorporate the CANADA GOOSE Trademarks into the URL, and the Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. *Id.* Canada Goose has not licensed or authorized Defendants to use its CANADA GOOSE Trademarks, and none of the Defendants are authorized retailers of genuine Canada Goose Products. *Id.*

ii.    Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines

Defendants also deceive unknowing consumers by using the CANADA GOOSE Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to

9

consumer searches for Canada Goose Products. *Id.* at ¶ 15. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Canada Goose Products. *Id.* Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. *Id.* As such, Canada Goose also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit Canada Goose Products.

iii.     <u>Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down</u>

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. *Id.* at ¶ 16. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. *Id.* Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. *Id.* On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. *Id.* Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. *Id.* at ¶ 17. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to

10

register the respective domain names. *Id.* In addition, Counterfeit Canada Goose Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Canada Goose Products were manufactured by and come from a common source and that Defendants are interrelated. *Id.* The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from Canada Goose's canada-goose.com website. *Id.*

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. *Id.* at ¶ 18. *See also,* Gaudio Declaration at ¶ 5. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. *Id.* *See also,* Gaudio Declaration at ¶ 5. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. *Id.* *See also,* Gaudio Declaration at ¶ 6. Rogue servers are notorious for ignoring take down demands sent by brand owners. *Id.* *See also,* Gaudio Declaration at ¶ 6. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. *Id.* A 2012 U.S. Customs and Border Protection report on seizure statistics indicated

that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers. Gaudio Declaration at ¶ 3.

Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Canada Goose's enforcement efforts. Forrest Declaration at ¶ 19. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. *Id.* *See also,* Gaudio Declaration at ¶ 7. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court. Gaudio Declaration at ¶ 9.

Canada Goose's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit Canada Goose Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. On information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the CANADA GOOSE Trademarks in the same transaction, occurrence, or series of transactions or occurrences. As indicated above, tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Canada Goose to learn Defendants' true identities, the exact interworking of their massive counterfeit network, and the relationship among them. In the event that Defendants

12

provide additional credible information regarding their identities, Canada Goose will take appropriate steps to amend the Amended Complaint.

## III.    ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Canada Goose's reputation and the goodwill symbolized by the CANADA GOOSE Trademarks.    To stop Defendants' sale of Counterfeit Canada Goose Products, Canada Goose respectfully requests that this Court issue a temporary restraining order ordering, among other things, the transfer of the Defendant Domain Names to Canada Goose to redirect to a website providing notice of these proceedings and the freezing of Defendants' assets.    Without the relief requested by Canada Goose's instant Motion, Defendants' unlawful activities will continue unabated, and Canada Goose and consumers will suffer enormous irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b).  The Defendants here fraudulently promote, advertise, offer to sell, and sell goods bearing counterfeits of the CANADA GOOSE Trademarks via the Defendant Internet Stores.  Defendants are creating a false association in the minds of consumers between the Defendants and Canada Goose by deceiving consumers into believing that the Counterfeit Canada Goose Products for sale on Defendants' websites are sponsored or endorsed by Canada Goose.  The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the CANADA GOOSE Trademarks and preserve the status quo until such time as a hearing can be held.

13

In the absence of a temporary restraining order without notice, the Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based bank accounts, including PayPal accounts. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Canada Goose respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### A.      This Court May Exercise Personal Jurisdiction Over Defendants

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of the CANADA GOOSE Trademarks. Each Defendant has targeted sales from Illinois residents by operating online stores that offer shipping to the

14

United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Canada Goose Products to consumers within the United States, including Illinois. *See* Amended Complaint at ¶¶ 2, 12, 21 and 22. Without the benefit of an evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010); *see also*, *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Illinois courts regularly exercise personal jurisdiction over websites using registered trademarks without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to Illinois residents over the Internet. 735 ILCS 5/2-209(a)(2). *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.,* 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required)*; Monster Energy Company v. Chen Wensheng, et al.*, 2015 U.S. Dist. LEXIS 132283, at *11 (N.D. Ill. Sept. 29, 2015) (personal jurisdiction properly asserted over defendants who offered to sell counterfeit products to all fifty states, including Illinois, through an Internet store); *Burberry Limited, et al*. *v. Weng Junpeng, et al.*, No. 15-cv-7994 (N.D. Ill. Oct. 2, 2015) (unpublished) ("[a] single tortious act committed in Illinois, no matter how minimal, brings the alleged tortfeasors within the scope of the long arm statute and thus demonstrates that personal jurisdiction is proper in Illinois"); *Dental Arts Lab., Inc. v. Studio 360 The Dental Lab,*

*LLC*, 2010 WL 4877708, 4 (N.D. Ill. 2010) ("To sell an infringing article to a buyer in Illinois is to commit a tort in Illinois sufficient to confer jurisdiction under the tort provision of the long-arm statute. Intellectual property infringement takes place in the state of the infringing sales … for purposes of tort provisions of the Illinois long arm-statute."); *Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (defendants stood ready and willing to do business with Illinois residents, and in fact, knowingly did do business with Illinois residents by selling products to Illinois residents); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) (personal jurisdiction properly asserted against defendants who offered to sell and sold counterfeit products to Illinois residents through an Internet website). Furthermore, Defendants' use of the CANADA GOOSE Trademarks on the Defendant Internet Stores to sell counterfeit goods is sufficient to establish liability under the Lanham Act even if the goods were not shipped to Illinois. *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 830 (N.D. Ill. 2000); *accord Levi Strauss & Co. v. Shilon,* 121 F.3d 1309, 1312 (9th Cir. 1997); *see also, Ty, Inc. v. Baby Me, Inc.,* 2001 LEXIS 5761, 14 (N.D. Ill. 2001) (defendant's sale of infringing products in Illinois via website aimed at U.S. consumers generally sufficient to establish personal jurisdiction).

Through at least the fully interactive, commercial Internet websites operating under the Defendant Domain Names and the marketplace listings operated using the Online Marketplace Accounts, each of the Defendants has targeted sales from Illinois residents by offering shipping to the United States, including Illinois, and, on information and belief, has sold Counterfeit Canada Goose Products to residents of the United States, including Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Canada Goose substantial injury in the State of Illinois.

**B.      Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted).  A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted.  *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.*  Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction.  *Id.*  The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction.  *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)).  This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position.  *Id.*  The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief."  *Id.* at 895–896.  The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor.  *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

17

### C. Canada Goose Will Likely Succeed on the Merits

#### i. Canada Goose Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim.

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, Canada Goose must show (1) its marks are distinctive enough to be worthy of protection, (2) Defendants are not authorized to use the CANADA GOOSE Trademarks, and (3) Defendants' use of the CANADA GOOSE Trademarks causes a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). Canada Goose satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Regarding the first two elements, Canada Goose's CANADA GOOSE Trademarks are registered with the United States Patent and Trademark Office and have been used exclusively and continuously in the United States by Canada Goose for many years, some since at least as early as 1994. Forrest Declaration at ¶¶ 5 and 6. The registrations for the CANADA GOOSE Trademarks are valid, subsisting, in full force and effect, and one is incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 6. The registrations for the CANADA GOOSE Trademarks constitute *prima facie* evidence of their validity and of Canada Goose's exclusive right to use the CANADA GOOSE Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Canada Goose

has not licensed or authorized Defendants to use the CANADA GOOSE Trademarks, and none of the Defendants are authorized retailers of genuine Canada Goose Products.  *Id*. at ¶ 14.

Canada Goose satisfies the third factor, as well.  The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion."  *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007); *Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q. 2d 1412, 1417 (S.D.N.Y. 1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the Polaroid factors."); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.").  Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the CANADA GOOSE Trademarks.

The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another.  *Eli Lilly*, 233 F.3d at 461–462 (citation omitted).  These factors are not a mechanical checklist, and "[t]he proper weight given to each of [the] factors will vary from case to case."  *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996).  At the same time, although no one factor is decisive, the similarity of the marks, the intent of the

defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

In this case, Canada Goose plainly satisfies the likelihood of confusion test. The Defendants are selling Counterfeit Canada Goose Products that look similar to genuine Canada Goose Products and use counterfeit marks identical to the CANADA GOOSE Trademarks. As such, the first and second likelihood of confusion factors weigh heavily in favor of Canada Goose.

Canada Goose also satisfies the third factor, namely, the area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties used the same channels of commerce, targeted the same general audience, and/or used similar marketing procedures. *Id.* Here, both Canada Goose and Defendants advertise and sell their products to consumers via the Internet. Both parties use the same means and the same channels of commerce to target the same Internet consumers looking for genuine Canada Goose Products. The Defendant Internet Stores advertise and sell Counterfeit Canada Goose Products online, just as Canada Goose advertises and sells its genuine Canada Goose Products online at canada-goose.com and through other authorized online retailers. Thus, because Defendants target the same Internet consumers by the same means as Canada Goose, this factor also weighs heavily in favor of Canada Goose.

Regarding the fourth factor, degree of consumer care, consumers purchasing Canada Goose Products are not a certain specialized, sophisticated group of people. Rather, the consumer base is a diverse group of people, including children, adults, men, and women.

"[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001) (citation omitted). As such, Canada Goose consumers are very likely to be confused, so this factor favors Canada Goose.

Due to their long-standing use and wide acceptance by the public, the CANADA GOOSE Trademarks have become famous and associated with high-quality, genuine Canada Goose Products. The CANADA GOOSE Trademarks are distinctive when applied to genuine Canada Goose Products. The marks signify to consumers that the products come from Canada Goose and are manufactured to the highest quality standards. Consumers have come to recognize the Canada Goose brand as a source of premium outerwear. Thus, the fifth factor, the strength of the marks, also weighs heavily in favor of Canada Goose.

As for the sixth factor, Canada Goose does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "plaintiff need not show actual confusion in order to establish likelihood of confusion."). In this case, actual confusion can be inferred because Defendants are selling Counterfeit Canada Goose Products that use the CANADA GOOSE Trademarks. Because the goods look similar, consumers will be confused and think that Defendants' products are genuine Canada Goose Products or are sponsored or endorsed by Canada Goose. This factor weighs in favor of Canada Goose.

In addition to point-of-sale confusion about the source of products sold on the Defendant Internet Stores, the Seventh Circuit has recognized that the Lanham Act's protections also extend to post-sale confusion of potential customers. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 683 (7th Cir. 2001). Post-sale confusion refers to a situation in which, for example, a potential customer sees a product bearing the infringing label and mistakenly attributes the product to the brand owner, thereby influencing his buying decision, either positively or negatively. *Id.* That association also constitutes infringement of Canada Goose's registered CANADA GOOSE Trademarks. *Id.*

Regarding the seventh and final factor, Defendants are intentionally using the CANADA GOOSE Trademarks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit Canada Goose Products are manufactured by or emanate from Canada Goose. Defendants are purposefully attempting to benefit and trade off of Canada Goose's goodwill and reputation. Therefore, the final factor regarding Defendants' intent also weighs heavily in Canada Goose's favor.

In sum, it is manifestly clear that each of the seven likelihood of confusion factors weighs heavily in favor of Canada Goose, and, therefore, Canada Goose has proved that it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

        ii.    <u>Canada Goose Is Likely to Succeed on Its False Designation of Origin Claim</u>

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc.*

*v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost*, 403 F. Supp. 2d at 684–685. Because the CANADA GOOSE Trademarks are registered marks, and Canada Goose has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants (supra), a likelihood of success on the merits for Canada Goose's false designation of origin claim is also established.

iii. <u>Canada Goose Is Likely to Succeed on Its Cybersquatting Claim</u>

Canada Goose is also likely to succeed on its cybersquatting claim against the Defendant Domain Names that incorporate the CANADA GOOSE Trademarks. Pursuant to the Anticybersquatting Consumer Protection Act of 1996 (ACPA), a person alleged to be a cybersquatter is liable to the owner of a protected mark if that person: (i) has a bad faith intent to profit from the mark and (ii) registers, traffics in, or uses a domain name that … is identical or confusingly similar to or dilutive of a mark that is "distinctive" or "famous." 15 U.S.C. § 1125(d)(1)(A). In such cases, in addition to other damages, "a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C).

Courts have often noted that one focus of the ACPA is to address counterfeit sellers who "register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site … [and] target distinctive marks to defraud consumers." *Lucas Nursery & Landscaping, Inc. v. Grosse,* 359 F.3d 806, 809 (6th Cir. 2004).

1. *The CANADA GOOSE Trademarks Are Distinctive and Famous*

The CANADA GOOSE Trademarks are distinctive and famous with consumers in the U.S. and worldwide, particularly with consumers who live in climates with harsh weather

23

conditions.  As noted above, Canada Goose has invested many millions of dollars in advertising and promoting the CANADA GOOSE Trademarks in the United States and throughout the world.  Consumers identify the CANADA GOOSE Trademarks with Canada Goose's high-quality products.  In view of this and the fact that the CANADA GOOSE Trademarks are registered with the United States Patent and Trademark Office on the Principal Register, Canada Goose is likely to succeed in showing that its CANADA GOOSE Trademarks are distinctive and/or famous.

> 2.    *Defendants Have Bad Faith Intent to Profit from the CANADA GOOSE Trademarks*

Pursuant to the ACPA, a court may consider a myriad of factors when determining whether a person has bad faith intent to profit from a mark, including the following nine enumerated factors: (1) the trademark or other intellectual property rights of the person, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) the person's intent to divert consumers from the mark owner's online location to a site … that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark; (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used … the domain name in the bona fide offering of any goods or services; (7) the person's provision of material and misleading false contact information when applying for the registration of the domain name; (8) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to the marks

of others; and (9) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous. 15 U.S.C. § 1125(d)(1)(B)(i).

A court is not limited, however, to considering the nine enumerated factors when determining the presence or absence of bad faith. 15 U.S.C. § 1125(d)(1)(B)(i). Indeed, the factors are "expressly described as indicia that 'may' be considered along with other facts." *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 269 (4th Cir. 2001) (citation omitted). The ACPA allows a court to view the totality of the circumstances in making the bad faith determination. *Id.* at 270. Federal courts recognize that "there is no simple formula for evaluating and weighing these factors." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 234 (4th Cir. 2002). However, courts have held that the registration of a domain name incorporating a trademark owner's mark and being used to sell counterfeit versions of the trademark owner's goods is a particularly egregious form of bad faith. *See, e.g. Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584-85 (E.D. Pa. 2002).

In the instant case, it is manifestly clear that the Defendants have acted with bad faith intent to profit from Canada Goose's distinctive and famous CANADA GOOSE Trademarks. Many of the Defendant Domain Names incorporate the CANADA GOOSE Trademarks in their entirety in the URLs, and the corresponding websites use the CANADA GOOSE Trademarks and copyright-protected content, images, and product descriptions without authorization to sell Counterfeit Canada Goose Products. This is a clear violation of United States law, including Section 1125 of the Trademark Act (15 U.S.C. § 1125) (§ 43 of the Lanham Act) and Section 501 of the Copyright Act (17 U.S.C. § 501).

3.    *The Domain Names Are Identical or Confusingly Similar to or Dilutive of the CANADA GOOSE Trademarks*

When dealing with domain names, a court must evaluate an allegedly infringing domain name in conjunction with the content of the website identified by the domain name. *Lamparello v. Falwell*, 420 F.3d 309, 316 (4th Cir. 2005). Here, there can be no question that many of the Defendant Domain Names are identical or confusingly similar to the CANADA GOOSE Trademarks. The CANADA GOOSE Trademarks appear without alteration in many of the Defendant Domain Names, clearly referring to the Canada Goose brand. Moreover, as noted above, Defendants design their websites so that they look like authorized online retailers or outlet stores selling genuine Canada Goose Products. Defendants perpetuate this illusion by using domain names incorporating Canada Goose's registered trademarks and using Canada Goose's copyright-protected photos and other images showing genuine Canada Goose Products with detailed product descriptions (often copied and pasted directly from Canada Goose's own website at canada-goose.com).

In addition, courts have found that the addition of generic or geographic terms, such as "shop," "online" and "store" are not sufficient to distinguish the domain name from a protected mark incorporated therein. *See, e.g., Harrods*, 302 F.3d at 247. As such, the Defendant Domain Names that incorporate any of the CANADA GOOSE Trademarks are identical and/or confusingly similar to the CANADA GOOSE Trademarks.

iv.    Canada Goose Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* at 579 (citation omitted). The determination as to

whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 680–681 (N.D. Ill. 1998). Because Canada Goose has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants (supra), and the standard is the same under Illinois law, Canada Goose has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

### D. There Is No Adequate Remedy at Law and Canada Goose Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir. 1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the CANADA GOOSE Trademarks has and continues to irreparably harm Canada Goose through diminished goodwill and brand confidence, damage to Canada Goose's reputation, loss of exclusivity, and loss of future sales. Forrest Declaration at ¶¶ 20-24. The extent of the harm to Canada Goose's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Canada Goose will suffer immediate and irreparable injury, loss, or damage if an ex parte Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1)(B). Forrest Declaration at ¶ 25. As such, Canada Goose should be granted preliminary relief.

### E. The Balancing of Harms Tips in Canada Goose's Favor

As noted above, if the Court is satisfied that Canada Goose has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Canada Goose will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own

28

peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Canada Goose has demonstrated, Defendants have been profiting from the sale of Counterfeit Canada Goose Products. Thus, the balance of equities tips decisively in Canada Goose's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### F. Issuance of the Injunction Is in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal trademark law. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Canada Goose's approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005)

29

("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is significant, and the injunctive relief that Canada Goose seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademarks and service marks used in connection with those goods and services. Unless Defendants' unauthorized use of the CANADA GOOSE Trademarks is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For all of these reasons, it is respectfully submitted that granting Canada Goose's Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

30

**A.** **A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Canada Goose's Marks Is Appropriate**

Canada Goose requests a temporary injunction requiring the Defendants to immediately cease all use of the CANADA GOOSE Trademarks, or substantially similar marks, on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the CANADA GOOSE Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the CANADA GOOSE Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion. Canada Goose is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit Canada Goose Products.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Michael Kors, L.L.C. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*; No. 13-cv-8612 (N.D. Ill. Dec. 5, 2013) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order); *Calvin Klein Trademark Trust, et al. v. The Partnerships, et al.*, No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) (unpublished) (same); *Manolo Blahnik International Limited v. The Partnerships, et al.*, No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013) (unpublished) (same); *NBA Properties, Inc., et al. v. The Partnerships, et al.*, No. 13-cv-7181 (N.D. Ill. Oct. 9, 2013) (unpublished) (same); *Beats Electronics, LLC v. The Partnerships, et al.*, No. 13-cv-6724 (N.D. Ill. Sept. 25, 2014) (unpublished) (same); *Lululemon Athletica Canada Inc. v. The Partnerships, et al.*, No. 13-cv-6297 (N.D. Ill. Sept. 10, 2013) (unpublished) (same); *Chrome Hearts LLC v. The Partnerships, et al.*, No. 13-cv-4784 (N.D. Ill. July 10, 2013) (unpublished) (same); *Luxottica USA LLC v. The Partnerships, et al.*, No. 13-cv-4429 (N.D. Ill. June 20, 2013)

31

(unpublished) (same); *Oakley, Inc. v. Does 1-100,* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished)(same); *True Religion Apparel, Inc. v. Does 1-100,* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Tory Burch LLC v. Zhong Feng, et al.,* No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Coach, Inc., et al. v. Does 1-100,* No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) (same); *Abercrombie & Fitch Trading Co. v. 4cheapbags.com,* No. 1:12-cv-21088 (S. D. Fla. April 4, 2012) (unpublished) (same); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.,* No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) (same) (hereinafter, collectively referred to as the "*Counterfeit Website Cases*"); *see also, Ford Motor Co. v. Lapertosa,* 126 F. Supp. 2d 463, 468 (E.D. Mich. 2000) (enjoining Defendant from "using in any way the Internet domain name 'fordrecalls.com'"); *Kraft Food Holdings, Inc. v. Helm,* 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002) (granting preliminary injunction requiring defendant to "immediately" remove all references to version of plaintiff's mark, including removing all references "from metatags, metanames or any other keywords on his websites").

### B. Transferring the Defendant Domain Names to Canada Goose's Control Is Appropriate

As a part of the Temporary Restraining Order, Canada Goose also seeks temporary transfer of the Defendant Domain Names to Canada Goose's control in order to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., the Counterfeit*

*Website Cases, supra* at p. 31; *see also Board of Directors of Sapphire Bay Condos. W. v. Simpson,* 129 F. App'x 711 (3d Cir. 2005) (affirming District Court's granting of the preliminary injunction ordering defendant to "cancel his registration of the domain name and refrain from using the name, or any derivative thereof, for any Web site under his ownership or substantial control"); *Chanel, Inc. v. Paley,* No. 3:09-cv-04979-MHP (N.D. Cal. Nov. 13, 2009) (unpublished) (granting temporary restraining order and disabling domain names at issue); *Philip Morris U.S.A., Inc. v. Otamedia Ltd.,* 331 F. Supp. 2d 228, 246 (S.D.N.Y. 2004) (granting order transferring ownership of Defendant's Internet domain names to Plaintiff); *Ford Motor Co. v. Lapertosa,* 126 F. Supp. 2d at 467 (granting Plaintiff's preliminary injunction because, among other things, "Defendant's misappropriation of the goodwill [Plaintiff] has developed in the mark by registering the [infringing] Internet domain name ... significantly tarnishes [Plaintiff's] reputation").

As such, Canada Goose respectfully requests that, as part of the Temporary Restraining Order, the Court require the relevant registries and/or registrars for the Defendant Domain Names to transfer the Defendant Domain Names to Canada Goose.

### C. Preventing the Fraudulent Transfer of Assets Is Appropriate

Canada Goose requests an *ex parte* restraint of Defendants' assets so that Canada Goose's right to an equitable accounting of Defendants' profits from sales of Counterfeit Canada Goose Products is not impaired[1]. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their

---

[1] Canada Goose has concurrently filed a Motion for Leave to File Under Seal certain documents for this same reason.

assets in China, making it easy to hide or dispose of assets, which will render an accounting by Canada Goose meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, Canada Goose has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Canada Goose is entitled, "subject to the principles of equity, to recover ... defendant's profits." Canada Goose's Amended Complaint seeks, among other relief, that Defendants account for and pay to Canada Goose all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Canada Goose's request for a prejudgment asset freeze to preserve relief sought by Canada Goose.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940))). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.; see also Animale Grp. Inc.* 256 F. App'x

34

at 709; *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd. v.* 970 F.2d at 559; *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013). In addition, courts in this district and across the country regularly issue asset restraining orders for entire financial accounts in cases involving the sale of counterfeit products. *See, e.g., the Counterfeit Website Cases, supra* at p. 31.

Canada Goose has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### D. Canada Goose Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors such as Visa, PayPal, and Western Union, which helps to increase their anonymity by interposing a third party

between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Canada Goose would not know the entities upon whom to serve the order. Canada Goose respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Canada Goose's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., the Counterfeit Website Cases, supra* at 31.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Canada Goose has worked with the same third parties in previous lawsuits and is not aware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied with identical requests in previous similar cases. More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, Canada Goose's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Canada Goose respectfully requests that expedited discovery be granted.

E.    **Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Canada Goose requests this Court's authorization to serve process by electronically publishing a link to the Amended Complaint, the Temporary Restraining Order, and other relevant documents on a website to which the

Defendant Domain Names that are transferred to Canada Goose's control will redirect, and/or by sending an e-mail to the e-mail addresses identified in Exhibits 5 and 6 to the Declaration of David Forrest and any e-mail addresses provided for Defendants by third parties that includes a link to said website. Canada Goose submits that providing notice via electronic publication and/or e-mail, along with any notice that Defendants receive from domain name registrars and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) have provided false names and physical address information in their registrations for the Defendant Domain Names in order to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which the registrants of the Defendant Domain Names may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Canada Goose will almost certainly be left without the ability to pursue a final judgment.

According to Section 3.7.7.1 of the Registrar Accreditation Agreement established by the Internet Corporation for Assigned Names and Numbers ("ICANN"), an individual or entity that registers a domain name is required to provide "accurate and reliable contact details and promptly correct and update them during the term of the … registration, including … postal address." *See* Gaudio Declaration at ¶ 10. An investigation of the WhoIs information for each

37

of the respective Defendant Domain Names for which registration information is available reveals that Defendants have ignored the applicable ICANN regulations and provided false physical address information to the domain name registrars in order to avoid full liability. Gaudio Declaration at ¶ 11. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, fail to include cities or states, or use a privacy service that conceals this information. *Id.* Identical contact information among multiple domain names also suggests that many of the aliases used to register the Defendant Domain Names are used by the same individual or entity. *Id.*

Despite providing false physical addresses, the registrants of the Defendant Domain Names must generally provide an accurate e-mail address so that their registrars may communicate with them regarding issues related to the purchase, transfer, and maintenance of the various accounts. Likewise, Online Marketplace Account operators accepting PayPal must provide a valid e-mail address to customers for completing payment. Moreover, it is necessary for merchants, such as the registrants of the Defendant Domain Names, who operate entirely online, to visit their Internet Store to ensure it is functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the

38

defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; s*ee also, e.g., the Counterfeit Website Cases, supra* at p. 31; *see also*, *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); s*ee also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure"). Canada Goose submits that allowing service solely by e-mail and/or electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the registrants of the Defendant Domain Names to conduct their Internet-based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other

limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* As such, this Court may allow Canada Goose to serve the defendants via electronic publication and/or e-mail.

Additionally, Canada Goose is unable to determine the exact physical whereabouts or identities of the registrants of the Defendant Domain Names due to their provision of false and incomplete street addresses. Canada Goose, however, has good cause to suspect the registrants of the respective Defendant Domain Names are all residents of China. The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Convention"). Gaudio Declaration at ¶ 12. The Hague Convention does not preclude service by e-mail, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit e-mail service. *Id.* Additionally according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." *Id.* As such, United States District Courts, including in this District, routinely permit alternative service of process notwithstanding the applicability of the Hague Convention. *See e.g.*, *In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); s*ee also In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v.*

*Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community").  In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process.  Gaudio Declaration at ¶ 13.

The proposed Temporary Restraining Order provides for issuance of single original summons[2] in the name of "Kobe Song and all other Defendants identified in the Amended Complaint" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b).  As such, Canada Goose respectfully requests this Court's permission to serve Defendants via e-mail and/or electronic publication.

## V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion.  *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c).

Because of the strong and unequivocal nature of Canada Goose's evidence of counterfeiting, infringement, and unfair competition, Canada Goose respectfully requests that this Court require Canada Goose to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00).  *See, e.g., Oakley, Inc. v. Does 1-100;* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100;* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond); *Tory Burch LLC v. Zhong Feng, et al.*, No.

---

[2]  The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified."  Fed. R. Civ. P. 4(b) advisory committee notes (1993) (emphasis added).

1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Coach, Inc., et al. v. Does 1-100,* No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) ($10,000 bond)*; Abercrombie & Fitch Trading Co. v. 4cheapbags.com,* No. 1:12-cv-21088 (S. D. Fla. June 6, 2012) (unpublished) ($10,000 bond).

## VI.    CONCLUSION

Defendants' counterfeiting operations are irreparably harming Canada Goose's business, its famous Canada Goose brand, and consumers.  Without entry of the requested relief, Defendants' sale of Counterfeit Canada Goose Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit Canada Goose Products have been manufactured by or emanate from Canada Goose, when in fact, they have not.  Therefore, entry of an *ex parte* order is necessary to protect Canada Goose's trademark rights, to prevent further harm to Canada Goose and the consuming public, and to preserve the status quo.  In view of the foregoing and consistent with previous similar cases, Canada Goose respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Canada Goose intends to present a motion for preliminary injunction.

Dated this 10th day of December 2015.          Respectfully submitted,

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Attorneys for Plaintiff Canada Goose Inc.*